UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| GULET MOHAMED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:11-CV-50 |
| v. ) | |
| ) | |
| ERIC H. HOLDER, JR., in his official capacity as ) | |
| Attorney General of the United States, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF LAURA LYNCH

I, LAURA LYNCH, hereby declare as follows:

1. I have served as the Director of the Office of Transportation Security Redress (OTSR), Transportation Security Administration (TSA), U.S. Department of Homeland Security (DHS), as well as the Director of the DHS Traveler Redress Inquiry Program (DHS TRIP), since January 30, 2011. As part of my official duties, I am responsible for the oversight and management of traveler redress programs, the implementation of redress processes, facilitating integration with other organizations and stakeholders, driving strategic planning and management, and serving as the spokesperson and liaison for DHS TRIP and OTSR on redress issues.

2. The statements made within this Declaration are based upon my personal knowledge, information made available to me in my official capacity, and conclusions reached in accordance with such information.

3. DHS TRIP is the culmination of successive attempts to create a process to address travel-related complaints. First, Public Law 108-458, Title IV, § 4012(a)(1) (December 17, 2004) amended 49 U.S.C. § 44903 by requiring TSA to begin the process of assuming the performance of passenger prescreening and by further requiring that TSA establish a timely and fair process for travelers to appeal to TSA their placement on the No Fly and Selectee lists and to correct any erroneous information in their records. TSA formed OTSR pursuant to this mandate. Second, on January 17, 2006, Secretary of State Condoleezza Rice and Secretary of Homeland Security Michael Chertoff announced the Rice-Chertoff Initiative. The initiative included the creation of a government-wide redress program that would enable all travelers to resolve, for example, security screening complaints through a single federal government office. Third, as part of the "Act to

provide for the implementation of the recommendations of the National Commission on Terrorist Attacks Upon the United States," Pub. L. 110-53 (August 3, 2007), 49 U.S.C. § 44926, Congress directed the Secretary of Homeland Security to establish a timely and fair redress process for travelers who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by TSA, U.S. Customs and Border Protection (CBP), or any other office or component of DHS. The Act further directed the Secretary of DHS to establish the Office of Appeals and Redress to implement, coordinate, and execute the process established by the Secretary and required that the Office of Appeals and Redress include representatives from TSA, CBP, and such offices and components of the Department as the Secretary determines appropriate.

4. In February 2007, DHS TRIP was officially launched as the central processing point for redress inquiries among the DHS components. On December 10, 2007, the Secretary of DHS designated TSA OTSR, which acts as DHS's lead agent managing DHS TRIP, as the Office of Appeals and Redress required under Pub. L. 110-53. DHS TRIP provides a single, formal administrative process for individuals who, for example, believe they have been denied or delayed airline boarding as a result of TSA's watch list matching program, Secure Flight[1]; or who have been denied or delayed entry into or exit from the U.S. at a port of entry; or who have been repeatedly referred to additional (secondary) screening.

5. Travelers who believe that they have experienced such problems because they were wrongly identified as a threat may submit a Traveler Inquiry Form to DHS TRIP. *See* http://www.dhs.gov/files/programs/gc_1169676919316.shtm (DHS Traveler Redress Inquiry Program website, which includes online the Travel Inquiry Form).

6. The DHS TRIP Traveler Inquiry Form may be submitted on-line, by electronic mail or via hard copy sent by mail. On the DHS TRIP Traveler Inquiry Form, travelers are prompted to describe their particular experience and provide at least one piece of government-issued photo identification documentation, as well as contact information to which a response will be directed.

7. When a traveler files an inquiry with DHS TRIP on-line, the system automatically provides the traveler a Redress Control Number to help monitor the progress of the inquiry. When filing is done via electronic mail or hard-copy, the traveler receives the Redress Control Number at the conclusion of the DHS TRIP review with the determination letter. The Redress Control Number matches the individual to the results

---

[1] Implemented pursuant to 49 U.S.C. §§ 114, 44901, 44902, 44903, and 40113, Secure Flight requires aircraft operators to collect a passenger's full name, date of birth, gender and Redress Number (if applicable). *See* 49 C.F.R. § 1560.101(a)(1). TSA uses this data to perform the watch list matching functions previously conducted by aircraft operators. *See* 49 C.F.R. §§ 1560.1(b)-(c), 1560.105(a). TSA has been transitioning to the Secure Flight program since January 2009. Secure Flight was fully implemented for all U.S. airlines on June 22, 2010, and for all covered airlines on November 23, 2010.

of his or her redress case within DHS TRIP. An additional feature of the Redress Control Number is that it may be used by the individual when making future air travel plans. In conjunction with Secure Flight, airlines have modified their reservation systems to allow individuals with Redress Control Numbers to enter them into the reservation system to potentially prevent unnecessary secondary screening. *See* 49 C.F.R. § 1560.205(c).

8.   Upon receipt of a Traveler Inquiry Form, DHS TRIP reviews the information submitted by the traveler and evaluates each inquiry to determine which DHS component or other governmental agency they must coordinate with to resolve the complaint. If the complainant is experiencing problems because he or she has been "misidentified," *i.e.*, the traveler has the same or a similar name as an individual identified in the Terrorist Screening Database (TSDB), DHS TRIP (or the appropriate DHS component office), in coordination with other relevant agencies, as appropriate, attempts to address the misidentification by updating or correcting information in a traveler's record, or taking other appropriate action. When the review is completed, DHS TRIP then sends a determination letter to the traveler, notifying him/her that it has completed its review and provides additional information as appropriate. The determination letter provides as much information to the inquiring traveler as possible without disclosing whether the traveler is included in the TSDB.

9.   If the traveler is an exact or near match to an identity in the TSDB, including its subset lists, the No Fly and Selectee Lists, the matter is referred to the Redress Unit at the Terrorist Screening Center (TSC). The TSC is an interagency entity administered by the Federal Bureau of Investigation (FBI) that was created by a Memorandum of Understanding entered into by the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of Central Intelligence to fulfill the requirements of Homeland Security Presidential Directive-6 (September 16, 2003). The TSC Redress Unit reviews the individual's record in consultation with other agencies, as appropriate. DHS TRIP has found that less than 1% of the DHS TRIP complainants actually have some connection to the TSDB.

10.   Upon the conclusion of that review, TSC's Redress Unit notifies DHS TRIP as to the outcome, and DHS TRIP then issues a determination letter. Throughout this administrative process, DHS TRIP maintains a record of the steps it has taken in each individual's case. The determination letter provides as much information to the inquiring traveler as possible without disclosing whether the traveler is included in the TSDB (including the No Fly or Selectee Lists). Current government policy dictates that TSDB status can neither be confirmed nor denied because there are concerns that revealing this information may have national security implications.

11.   DHS TRIP determination letters that are sent to those who assert that they have been denied or delayed airline boarding due to alleged placement on the No Fly or Selectee Lists explain that these individuals can seek judicial review in the U.S. Courts of Appeals, pursuant to 49 U.S.C. § 46110. In some cases, the letters inform these recipients that they can pursue administrative appeals with TSA. DHS TRIP determination letters do not provide specific assurances about future travel.

12. Thus, an individual who submits a Traveler Inquiry Form and participates in the DHS TRIP administrative redress process can obtain resolution of a range of travel or security screening related difficulties, including the potential removal of his or her name from the TSDB (including the No Fly or Selectee Lists), where appropriate. Although the final DHS TRIP determination letter does not state whether the individual ever was or still remains on the TSDB, if the individual's name was removed from such a list through the DHS TRIP redress process, it will be less likely that the individual will continue to experience the same type of security screening related difficulties as in the past.

13. To the best of my knowledge, as of March 18, 2011, DHS TRIP has not received a Travel Inquiry Form from the Plaintiff named in the above-captioned case.

I declare under penalty of perjury that the afore-going information is correct.

*Laura Lynch*
LAURA LYNCH

Date: March 21, 2011