UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION


GULET MOHAMED,

        Plaintiff

v.                                           NO. 1:11-cv-50 (AJT/TRJ)


ERIC H. HOLDER, JR., ET AL.,

        Defendants


**<u>Plaintiff's Motion to Compel Defendants to Answer His First Set of Interrogatories and First Set of Requests for Production of Documents</u>**


**<u>OVERVIEW</u>**[1]

    Pursuant to Rule 37(a)(3)(B), F.R.Civ.P, Gulet Mohamed, by undersigned counsel, respectfully requests this Court to compel defendants to answer his First Set of Interrogatories and his First Set of Requests for Production of Documents.

    On February 19, 2014, plaintiff served his First Set of Interrogatories and his First Set of Requests for Production of Documents. Exhs. A and A-1, attached. On March 10, 2014, defendants responded with some requested information and with objections. Exhs. B and B-1, attached. To address their differing perspectives, the parties met and conferred on March 20, 2014, but several discovery issues remain unresolved.

---

[1] The Court denied defendant's Rule 12(b)(6) Motion to Dismiss as to some of Count I, and as to all of Counts II and III of plaintiff's Third Amended Complaint. Jan. 22, 2014 Mem. Op. As to that part of Count I which the court granted, plaintiff filed a Motion for Reconsideration on 28 March 2014; the request is pending. Also, plaintiff's Motion for Leave to Amend was granted on 2014; the substance of both the Third and Fourth Complaints is identical.

## BURDEN OF PROOF AND LEGAL STANDARDS FOR REVIEW

The goal of discovery is to allow the parties on their own to acquire information that is relevant to the matters being litigated.  Where parties disagree, however, resolution of discovery disputes is left to the "sound discretion of the district court." *Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 792 (4th Cir. 1988).  Further, the "burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." *United Oil Co. v. Parts Assocs.*, 227 F.R.D. 404, 411 (D. Md. 2005).

## ARGUMENT

## I.   The Court Should Treat Defendants' General, Boilerplate Objections as Waived

A party responding to interrogatories and to requests for document production must object with specificity.  Rules 33(b)(4), 34(b)(2)(C), F.R.Civ.P.  If the responding party fails to be specific, the objection is waived "unless the court, for good cause, excuses the failure." *Burlington Northern & Santa Fe Ry. V. United States District Court*, 408 F.3d 1142 (9th Cir. 2005) (boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990), citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982) (…"party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive…."").  Moreover, to the extent objections are boilerplate, courts throughout the country have found them to be "prima facie evidence of a Rule 26(g) violation." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358-359 (D. Md. 2008).  *See also*, *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660-61 (D. Kan. 2004) (treating general objections made "to the extent [they] may apply" as waived; *Clay v. Consol Pa. Coal Co.*, 2013 U.S. Dist. LEXIS

2

105226, *5-7 (N.D. W. Va. June 12, 2013) (finding that even a "legitimate objection" can be waived "for failure to specify" the grounds for the objection).

With a few exceptions, in response to virtually all of plaintiff's discovery requests, and in violation of the Rules, defendants have asserted an exhaustive, identical boilerplate list of objections:

> Responding Parties object to the extent this Interrogatory seeks information that is classified and/or subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants further object to the Interrogatory to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection.

Exh. B. at 2.  *See also*, *infra*, at IV, *and see* Exh. B-1 as to defendants' document request boilerplate language.

Thus, defendants failed to indicate the actual basis of their numerous objections to plaintiff's First Set of Interrogatories and his Request for Production of Documents. Further, because defendants have objected only "to the extent" that those objections may apply, plaintiff has no idea which objections cover what categories of information sought via his interrogatories  or whether the objections asserted actually cover the information being sought.  Indeed, by asserting a privilege, for example, that defendants vaguely describe as constituting "appropriate statutory protection," defendants' responses even fail to state the specific statutory basis for their objections.  Thus, while Rule 33(b)(4) requires defendants to state the "grounds for objecting [to interrogatories]...with specificity," defendants failed to identify their objections with any degree of specificity.

The same may be stated as to defendants' responses to plaintiff's First Set of Requests for Production of Documents.  In addition to asserting the same boilerplate objections that were made as to all of plaintiff's Interrogatories, defendants listed other identical objections to virtually all of plaintiff's

3

document requests.  These objections include "to the extent [they] reques[t] the production of documents not in their possession, custody or control," "to the extent that [the request] defines 'document' to include all pre-decisional and deliberative material," to the extent the retrieval of electronically stored information "would involve undue expense, time, and allocation of resources," "to the extent…[the request is] not reasonably calculated to lead to the discovery of admissible evidence," and "to the extent [the request] seeks production of publicly available information."  Exh. B-1.  As is the case regarding Interrogatories, defendants did not identify the grounds upon which they rely for any of these objections. In addition, rather than explain how the various privileges, for example, they've asserted apply to the requested documents, defendants' responses are wholly inadequate.  Exh. B-1 at 4.

Thus, because defendants' objections are general and boilerplate, they fail to satisfy the standards set by applicable rules, *supra,* and the objections are also simply invalid.  *Mills v. East Gulf Coast Prep. Co.*, LLC, 259 F.R.D. 118, 132 (S.D.W.V. 2009) (objections cannot be applied with sufficient specificity to enable courts to evaluate their merits).  Consequently, the Court should consider the objections noted, *supra*, as having triggered objection waiver; and it should limit its assessment of defendants' objections only to those which comply with the federal rules.

As to the issue of privileges, also cited in boilerplate fashion throughout defendants' objections, Exhs. B and B-1, *passim*, the Court should compel defendants to produce the responsive information not covered by any particular privilege or Sensitive Security Information (SSI) classification.  Defendants offered a laundry list of eight privileges in their boilerplate discovery objections, but they failed to specify what responsive material is covered by which privilege.  Exhs. B and B-1.  Again, when an objection does not cover the entirety of a responsive answer, defendants "must specify the part" of the request covered by each particular objection. Fed. R. Civ. P. 34(b)(2)(D).  Instead, defendants objected to each request "to the extent" they sought information covered by state secrets privilege, law enforcement privilege, Sensitive

4

Security Information, national security information, deliberative process privilege, attorney-client privilege, work product privilege, or the Privacy Act.  Exhs. B and B-1, *passim*.

For most privileges, it is well-settled that the party asserting a privilege has the burden of demonstrating its applicability.  *In re: Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (attorney-client privilege); *Dinler v. City of New York (In re City of New York)*, 607 F.3d 923, 948 (2d Cir. 2010) (law enforcement privilege); *Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (work product privilege).  At this point, defendants have failed to produce even a privilege log and have otherwise failed to identify what responsive information is covered by which privilege, let alone demonstrate that those privileges do indeed apply.  Moreover, defendants have also generically cited state secrets privilege, but defendant Holder has failed thus far to formally cite the privilege as required.  *El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007).  Plaintiff is therefore handcuffed from making specific arguments as to defendants' privilege assertions.  Assuming that at least some of the responsive information is not privileged, defendants should be compelled to produce it.  For the responsive information that is privileged, defendants should specifically identify and invoke the relevant privileges.

To the extent defendants claim that specific responsive information legitimately falls under one of these eight privileges, defendants should be compelled to produce it subject to appropriate protective orders and other safeguards.  See*, infra*.  To the extent responsive information is classified as SSI, on 20 March 2014, at the parties' meet and confer, plaintiffs' counsel indicted they would be amenable to statutory SSI clearance under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355 to enable them to access information that is, in fact, privileged.  Also, as an alternative, defendants should be compelled to produce any responsive information that they claim is privileged and submit it to the Court for *in camera* inspection to determine whether the material in fact falls

into a "states secret" or other privilege category.[2]  See, e.g., *Dinler v. City of New York (In re City of New York)*, 607 F.3d 923, 948 (2d Cir. 2010) (explaining that district court must ordinarily review the said documents to assess both the privilege's applicability and the need for the documents).

## II.      The Court Should Compel Defendants to Produce Information from 2003 to the present

As to Interrogatories 3-18, Exh. A, regarding every request for document production, Exh. A-1, and to the extent each question or request seeks information before March 1, 2009, defendants argue that because "[p]laintiff alleges…defendants placed him on the No Fly List sometime after March 1, 2009," that, therefore, all discovery requests seeking information before that date "would be irrelevant and therefore, unduly burdensome."  Exhs. B and B-1.

As defendants know, however, whether the information sought is "reasonably calculated to lead to the discovery of relevant information," Rule 26, F.R.Civ.P, is the well-settled standard against which discovery requests must be measured.  The information sought meets this standard.

Plaintiff is seeking specific, targeted information -- from 2003, when the No-Fly List first went into effect, up to and including the present -- for several reasons.  Although plaintiff alleged he was placed on the No-Fly List while he was abroad, Count I, Third/Fourth Amd. Complaint, in fact plaintiff only assumes he was placed on that List at that time, but he could have been placed on it years earlier. Further, whatever investigatory steps defendants took or criteria defendants used in finding out about him and then placing him on the List must have been effected before March 2009.  Also, the development of criteria and processes utilized to formulate who should be on the List and who should not no doubt changed over time depending upon a host of factors, including political pressure. Moreover, if Defendants implemented, even temporarily, No-Fly List criteria that were less restrictive at

---

[2] It is not unheard of that material claimed to be privileged has been held not to be.  *New York Times v. United  States*, 403 U.S. 713 (1971)(purported "national security"); *United States v. Nixon,* 418 U.S. 683 (1974)(purported "executive privilege").

various points between 2003 and the present than that which existed in 2009, for example, defendants

have an obligation to produce that information.

As to Count III, two of the three factors in a procedural due process analysis include (a) "the risk

of an erroneous deprivation…through the procedures used, and the probable value, if any, of additional

or substitute procedural safeguards; and [(b)] the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would

entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Information about the Government's No-Fly

List process from the inception of the List in 2003 to the present day goes directly to both of these

prongs. For example, pre-2009 information would include past procedural safeguards, changes as to

various aspects of the process, the frequency of erroneous deprivations under procedural safeguards, and

the types of governmental burdens that are present under different processes. Therefore, requests

seeking documents and information between 2003 and the present are, in fact, "reasonably calculated to

lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Thus, because Defendants have information that predates March 1, 2009 that is relevant to

plaintiff's substantive and procedural due process claims, this Court should compel defendants to answer

Interrogatories 3-18 and to produce all of the documents plaintiff has requested, including those which

are dated 2003 through 2009.

**III.    For the reasons Noted Below, Defendants' Answers to Plaintiff's Interrogatories Do Not Fulfill Their Discovery Obligations**

A.  Interrogatories 1 and 2

Interrogatory 1 seeks information about the persons who "played any role in nominating and/or

placing Gulet Mohamed on the No Fly List;" Interrogatory 2 seeks information regarding the person or

persons who "played any role in detaining and/or interrogating Gulet Mohamed from December 20,

7

2010 to January 21, 2011." Exh. A, at 4, 5.  Obviously, these questions must be answered: they're directed at the essence of this lawsuit, and defendants possess the required information.  Therefore, the questions are proper.

Defendants have objected to Interrogatory 1 by claiming that confirming or denying "[p]laintiff's purported status with respect to the No Fly List…[is] contrary to government policy."  If plaintiff is prevented from receiving this information, he will have no way of knowing who to depose, who to seek admissions from, and how to proceed with preparing to try his case.[3]

As to Interrogatory 2, defendants have raised boilerplate but no specific objections.  See, *supra*, Para. 1. Consequently, the Court should compel defendants to answer both interrogatories fully.

B.        Interrogatory 3

Interrogatory 3 seeks information regarding the identity of persons who administered the No Fly List from 2003 through the present.  Defendants provided a partially responsive answer, back to March 2009, but not to 2003.   Exh. B, at #5.  In seeking the names of the pre-2009 persons, plaintiff may identify potential witnesses to depose to obtain information about the evolution of the No Fly program, about potential alternatives to it, and these persons may be in a position to assess its efficacy.  Thus, plaintiff's attempt to acquire this information is clearly calculated to discover relevant information, and, therefore, the Court should compel defendants to fully respond.

C.        Interrogatory 4

Interrogatory #4 seeks information from 2003 to the present regarding the "number of individuals placed in the Terrorist Screening Database (TSDB), the Selectee List, and the No Fly List and the number of U.S. citizens contained in each respective list." Exh. A, Interrog. #4.

---

[3] Defendants disclosed information about the plaintiff's No Fly List status *Ibrahim v. DHS*, Case3:06-cv-00545-WHA, Doc. 701-1 (02/06/14).  If government officials could disclose this in *Ibrahim,* there's no justification for refusing to do that here.

Defendants claim, however, that they are "only able to answer this interrogatory in part based upon TSDB's tracking of USPERS,"[4] Exh. B, at 8, and that it would be too burdensome to respond to the question from 2003 onward.  However, if the number of USPERs defendants have placed on the TSDB, Selectee List, or No Fly List is not astronomical, plaintiff believes defendants can readily obtain this information by referencing other information defendants have.  This material under defendants' control which is responsive to this questions should thus be produced, and because defendants acknowledge that as of May 18, 2012 they began tracking the "LPR status of individuals added to the TSDB," Exh. B, at 8, defendants can begin production by at the very least giving plaintiff the number of citizens defendants listed from that date to the present.

D.      Interrogatory 5

Interrogatory 5 seeks the number of No Fly List  nominations defendants made to the TSDB between 2003 and the present and which were made by any U.S. agency, as well as the number of those who defendants rejected.  Exh. A.  While defendants provided 2009 to 2013 information, they also acknowledged they had this information from 2006, when it first became possible to identify nominees and rejections, to 2009, but they declined to produce it.  Exh. B, at 9-10.[5]  Plaintiff is entitled to this information: he believes it will not only lead to other discoverable information, but also it is necessary so he can demonstrate ebbs and flows of numbers of nominations depending upon various factors including political and other pressures through the years.  Moreover, plaintiff believes there will be a dearth of persons nominated and then rejected for No-Fly List inclusion, a fact important to the theories of his case.

---

[4]  "USPERs" is defendants' acronym for "citizens and lawful permanent residents."

[5]  Defendants also raised the state secret privilege and "other appropriate statutory protection pertaining to such information," *inter alia*. *Id*., at 9.  See, *infra*, regarding plaintiff's privilege arguments.

E.   Interrogatory 6 and 18

Interrogatory 6 seeks the "number of nominations TSC has rejected because the derogatory information submitted to TSC did not meet TSC's standard for TSDB inclusion."  Exh. A.  Interrogatory 18 seeks the "number of TSDB nominations TSC has rejected because the identity information submitted did not meet TSC's standard for TSDB inclusion"   *Id*.

Defendants' answer fails to provide even partial information they may have which would be responsive.  Instead, defendants explain that TSC "does not, in the usual course of business, track or aggregate the basis for the rejection of a nomination for inclusion in the TSDB." *Id* at 13.[6]  While defendants may not be able to identify all of the instances which might be responsive to Interrogatories 6 and 18, they indicate that in "some cases the TSC personnel reviewing a nomination may provide additional details about the basis for the rejection of a nomination in a free-form part of the record." *Id.* Consequently, the Court should compel defendants to substantively address at the least the "free-form part of the record" as to identifying the number of rejections made based on insufficient derogatory and identity information.

F.      Interrogatory 7

Interrogatory 7 seeks "the percentage of…naturalized citizens" among the "total number of U.S. citizens who are on the No-Fly List."  Exh. A.  Other than raising boilerplate and general responses, including state secrets and a ream of other privileges, defendants have failed to respond to this interrogatory substantively, claiming instead that TSC does not "track in the usual course of business whether…an individual is a naturalized citizen…."  Exh. B, at 14-15.  However, defendants do indicate that TSDB "does contain a field for recording the naturalization certificate number of an individual" even though "completion of this field is not required."  *Id.*  Thus, defendants possess some readily

---

[6] See note 4, *supra*, regarding privileges relied on by defendants to justify not answering the question.

accessible information that is responsive to Interrogatory 7 insofar as they can tell plaintiff the number of entries with a naturalization certificate number, and from at least 2008.

G.      Interrogatory 8

Interrogatory 8 seeks a "numerical breakdown of religious affiliations and countries of birth of U.S. citizens who are on the No Fly List." Exh. A. In response, defendants claim they do not "in the usual course of business identify the religion of individuals in the TSDB or on the No Fly List." Exh. B, at 17. They also claim that neither list includes "a field for indicating an individual's religion," *id,* but even if there is no field for religious affiliation, it is still possible that records exist which indicate religious affiliations of listees. Plaintiff believes it is likely records about citizen nominations to the No Fly List would regularly disclose religious affiliations, and the Court, therefore, should compel defendants to review records under their control or to which they have access in order to respond to this question fully.[7]

H.      Interrogatory 9

Interrogatory 9 seeks the "percentage and number of persons on the TSDB and/or the No Fly List, who TSC later determined had been erroneously placed on said lists." Defendants state that because TSC does not "in the usual course of business, identify persons who were 'erroneously' included" on watchlists, they are "not able to respond to the interrogatory." *Id.* at 19-20. However, this does not preclude defendants from having access to statistics, or having

_____

[7] Defendants argue that a review of "source documents" would be burdensome. *Id.* Without their disclosing the number of citizens who are on the No Fly List -- or USPERS for the period of time during which TSC did not document whether a listee was a citizen or a lawful permanent resident -- it is impossible to determine how burdensome it would actually be to produce this, and to the extent that such a review might arguably be burdensome, there may be statistically valid samples of these numbers that could feasibly reduce the number of reviews of source documents defendants would have to undertake.

information from which they can derive statistics, about the rate and frequency or erroneous placements to the watchlists. Interrogatory 9 is straightforward and this Court should compel Defendants to answer it.

I. Interrogatory 10

Interrogatory 10 seeks the "specific reasons" as to why any U.S. citizen "has been removed from the TSDB, Selectee List, or the No Fly List, or whose placement thereon has been changed from one list to another." Exh. A. Defendants respond by stating TSC does not track "the reasons why a person is removed from the TSDB, No Fly List, or Selectee List nor does TSC track the reasons why a person may be moved between or off the No Fly List or Selectee List." Exh. B, at 21. However, plaintiff's request is not limited to what defendants track, and defendants have access to this information in "the underlying source documents." *Id.* at 21. Although defendants claim this search would be unduly burdensome, because defendants have failed to identify the number of citizens or USPERS on the No Fly List, it is impossible to determine how burdensome that review would be. To the extent defendants have responsive information, this Court should compel them to produce it.

J. Interrogatory 11

Interrogatory 11 seeks "the number of times U.S. officials permitted persons on the No Fly List to board flights that crossed U.S. airspace." Exh. A. In their answer, defendants indicate that, while they "do not track" the information responsive to Interrogatory 11, they do indicate that TSC has participated in an interagency process that allows USPERS on the No Fly List to board a flight back to the United States. Exh. B, at 24. Indeed, defendants concede they have participated in this process "on a number of occasions." *Id.* This Court should compel defendants to identify the number of times they know someone on the No Fly List boarded a flight that crossed U.S. airspace.

12

K.    Interrogatories 12 and 17

Interrogatory 12 seeks "all extra safety or other measures used prior to, during, and after

flights crossing U.S. airspace on which U.S. officials permitted persons on the No-Fly List to fly,"

Exh. A, and Interrogatory 17 seeks that same information with respect to plaintiff's January 2011

flight from Kuwait to the United States.  *Id.*  Defendants concede in their answers that they "have

access to certain information regarding security measures" but decline to disclose them, not due to

a privilege, but because "they cannot readily account for or confirm any measures taken before

August 2013 without researching and reviewing information controlled by other government

agencies."  Exh. B, at 26, 35.  Defendants do not explain the significance of the August 2013 date

and provide no responsive information subsequent to that date.  Because defendants admit they

possess responsive information and assert no privilege over it, this Court should compel them to

disclose that responsive information.

IV.    **Because Defendants' Responses to Plaintiff's First Set of Requests for Production
of Documents Do Not Qualify as an Answer, this Court Should Compel
Defendants' to Produce All Requested Documents**

Defendants responded to each document request with the following virtually identical passage:

Subject to and without waiving the foregoing objections, and consistent with the
discussion of counsel at the meet and confer on March 21, 2014, Responding Parties will
produce or identify responsive, non-privileged [responsive documents in effect and/or
dated on or after March 1, 2009] in their possession, custody and/or control to the extent
they can locate such documents after a reasonably diligent search. To the extent there are
any documents subject to applicable privileges and protections, except for the attorney-
client privilege and work product doctrine, the Responding Parties will produce a
privilege log that identifies such documents. However, if that privilege log, in and of
itself would reveal law enforcement sensitive information, Sensitive Security
Information, or classified information that may be subject to an assertion of the privilege
or other statutory protection, the Responding Parties will provide a privilege log to the
Court, upon request and in accordance with the discussion above, that lists privileged
documents that may exist and the basis for the assertion of privilege or protection, so that
such issues can be addressed by the Court in a manner consistent with applicable law and
that does not jeopardize any privileges, law enforcement or intelligence sources and
methods, or cause other harm to national security.

Exh. B-1, *passim.*

While plaintiff is amenable to providing defendants a reasonable period of time to conduct a document search, their boilerplate, generic response fails to provide plaintiff and the Court with any specific information about plaintiff's requests.  They have also failed to state when or how the documents may be available.  They have waived, therefore, their objections, and plaintiff as a consequence seeks to compel production of all the documents sought.   Rule 34(b)(2)(A), F.R.Civ.P.  *See also Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 574 (D. Md. 2010) (explaining that stating that documents will be produced "without indicating when or how they would be made available" constitutes failure to respond) (citing Fed. R. Civ. P. 34(b)(2)(A));  *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997) (holding that to "merely promise to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, . . . is treated as a failure to answer or respond").

When a party fails to respond, Rule 37(a)(3)(B) authorizes the party to move to compel a response.  Fed. R. Civ. P. 37(a)(3)(B).  Because defendants have failed to respond to plaintiffs' document requests, this Court should compel defendants to produce the requested documents.

**V.      For Reasons Noted Below, Defendants' Answers to Plaintiff's Request for Production of Documents Do Not Fulfill Their Discovery Obligations**

A.      RFPD 1 and 3

These requests, Exh. A-1, will permit plaintiff to assess how broad or narrow defendants' placement standards actually are.  This pertains directly to plaintiff's procedural and substantive due process claims.   Additionally, in light of one of defendants' objections, there should be no burden whatever for defendants to produce documents which reflect operations and standards of the No-Fly List which defendants have been using for more than a decade.

14

B.      RFPD 2

For plaintiff to determine if defendants subject the operation of the TSDB and the No-Fly

List to meaningful scrutiny, in order to ensure accuracy and presumably for other reasons, plaintiff

needs to discover whether defendants have undertaken investigations, reviews, and audits of those

programs.  Exh. A-1.  In reviewing such documents, plaintiff will be able to examine how

defendants view the efficacy and accuracy of their own watch listing process.  This is related to

plaintiff's procedural and substantive due process claims.

Plaintiff has targeted this request to the government program that caused his injury, yet

defendants have provided no specific information that the responsive documents are difficult to

access or that they are voluminous.  Therefore, these documents should be produced.

C.      RFPD 4-7[8]

Plaintiff's RFPD's 4-7 seek documents that are relevant to whether there are alternatives to

the No-Fly List that are less burdensome to the rights of listees.  In an effort to determine whether

such alternatives exist, RFPD 4 seeks documents that regard "assessments of the No-Fly List's

utility as a security measure."  Exh. A-1. RFPDs 5 and 6 seek documents that regard "the actual

and/or proposed abandonment or diminished use" or the "actual and/or proposed increase use of

the No-Fly List as a security measure."  *Id*.  RFPD 7 seeks documents that regard "actual and/or

proposed alternatives to the use of the No-Fly List." *Id*. All of these documents are relevant to

plaintiff's need to discover whether the use of alternatives to List placement were discussed,

implemented, abandoned, *inter alia* between 2003 and up to and including the present.  Finally,

defendants have not identified any reason why retrieving such documents would constitute an

undue burden. Exh. B-1 at 11–23. Rather, the severity of the injuries and deprivations defendants

---

[8] Defendants have largely given a general response to RPPD 3. Exh. B-1, at 8-11.  Plaintiff's
argument for compelling production of this material is set forth, *supra*, at para. I, p. 2.

have foisted on plaintiff and others by putting them on the No Fly List supports broad discovery so
that the most complete factual record will be developed.

D.    RFPD 8

Because plaintiff's substantive due process claim addresses his right to re-enter his country
from abroad, and having tried to undertake the movement necessary to do so, such documents are
at the core of his claim.  That is, one of the critical acts that gives rise to plaintiff's claims
concerns defendants' having prevented him from flying from Kuwait to the United States.

Plaintiff believes defendants have a policy and practice of placing citizens on the No Fly
List while abroad in order to coerce them into acting as informants once home.  Although
defendants have agreed to produce some documents dated after March 2009, they claim a variety
of excuses not to produce most material sought.  Exh. B-1, at 24-25.  Because defendants use the
No Fly List in this coercive manner -- to try to create this kind of leverage rather than to advance
flight security -- the No Fly List is plainly not narrowly tailored to advance a compelling
governmental interest.  *Washington v. Glucksberg*, 521 702, 721 (1997) (government may not
infringe upon a fundamental liberty interest at all, no matter what process is provided, unless the
infringement is narrowly tailored to serve a compelling state interest).

E.    RFPD 9, 10, 12

In each of these requests, plaintiff seeks documents about TRIP, a program administered
by defendant TSA but in and with which other defendants participate.  Defendants have repeatedly
claimed plaintiff's injury "can be redressed through DHS TRIP."  *See, e.g.,* Doc. Entry 59 at
11.  In fact, defendants argued against plaintiff's procedural due process claim in their Motion to
Dismiss by claiming "DHS TRIP satisfies the requirements of procedural due process."  *Id.* at 27.

In ruling on defendants' 12(b)(6) motion, the Court did not determine whether TRIP is an
adequate process.  Rather, it held that the resolution of plaintiff's procedural due process claims

16

"require an evidentiary record beyond that presented to the Court in connection with the defendant's motion to dismiss." 22 Jan. Opin. at 29.  Thus, plaintiff's discovery efforts to establish an evidentiary record that will reveal the constitutional adequacy of TRIP are absolutely and obviously necessary, and this Court, therefore, should compel defendants to produce documents responsive to these requests.

F.      RFPD 11

Although defendants disagree, Exh. B-1, because he is the plaintiff in this case, all documents defendants possess or control which are about him are relevant, *inter alia*. Exh. A-1. All, therefore, must be produced.

G.      RFPD 13

The purpose defendants have in maintaining the No-Fly List, Exh. A-1, is relevant to the question as to whether, under substantive due process, they have violated plaintiff's rights. Without having an explicit statement of purpose, which defendants have failed to provide, Exh. B-1, plaintiff is left to assume what defendants intend to accomplish by using a No-Fly List.  This is particularly critical in analyzing whether defendants' purpose is compelling and narrowly tailored. *Washington v. Glucksberg*, 521 702, 721 (1997)(government may not infringe upon a fundamental liberty interest at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest).

## CONCLUSION

For the reasons stated herein, and for any others stated at a hearing hereon, this Court should grant plaintiff's Motion to Compel.

Respectfully submitted,

_/s/_____

Gadeir Abbas (VA Bar #81161)
THE COUNCIL ON AMERICAN- ISLAMIC
RELATIONS
453 New Jersey Avenue, SE
Washington, D.C. 20003
Telephone: (202) 742-6410
Fax: (202) 488-0833
Email: gabbas@cair.com
*licensed in VA; not in DC practice limited to federal matters*

_/s/_____

Nina Kraut, General Counsel
(DC Bar #348185)
THE COUNCIL ON AMERICAN- ISLAMIC
RELATIONS
453 New Jersey Avenue, SE
Washington, D.C. 20003
Telephone: (202) 640-4934
Fax: (202) 488-0833
Email: nkraut@cair.com
*Admitted pro hac vice*

_/s/_____

Munia Jabbar, Staff Attorney
(DC Bar #1008337)
THE COUNCIL ON AMERICAN- ISLAMIC
RELATIONS
453 New Jersey Avenue, SE
Washington, D.C. 20003
Telephone: (202) 646-6033
Fax: (202) 488-0833
Email: mjabbar@cair.com
*Admitted pro hac vice*

*Attorneys for Gulet Mohamed*

18

**<u>NOTICE OF HEARING DATE</u>**

Pursuant to telephonic discussions with this Court's chambers on April 7, 2014, a hearing on this Motion is set for July 18, 2014.

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 7th day of April 2014, a copy of the foregoing was served electronically upon all counsel of record.

Respectfully submitted,


___/s/_____
Gadeir Abbas
453 New Jersey Avenue, SE
Council on American-Islamic Relations
Washington, DC 20003
Tel: (720) 251-0425
Fax: (202) 488-0833
gabbas@cair.com
*licensed in VA; not in DC – practice limited to federal matters*