UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

GULET MOHAMED,

      Plaintiff

    v.                                    NO. 1:11-cv-50 (AJT/TRJ)

ERIC H. HOLDER, JR., ET AL.,

      Defendants

**<u>Plaintiff's Response to Defendants' Motion to Stay</u>**

Plaintiff Gulet Mohamed, by and through the undersigned counsel, hereby file this Response to Defendants' Motion to Stay.  In short, this Court will have to at some point make a determination as to what, if any, process is due to Plaintiff in accordance with his procedural due process rights.  The summary judgment briefing currently scheduled is an appropriate vehicle for making that determination and is enabled by the record that currently exists, irrespective of the changes the Defendants may or may not make to a redress process.  If Defendants actually make meaningful changes to their redress procedures, this Court's decision regarding Plaintiff's procedural due process claim will serve as a baseline for assessing those changes.  Thus, summary judgment briefing should proceed as is currently scheduled, which may allow this Court to issue a decision against which any new changes can be measured.  Alternatively, if this Court grants Defendants' motion to stay, Plaintiff requests that the Court allow his substantive due process claim to proceed, as it does not regard DHS TRIP in any manner.

**OVERVIEW**

Plaintiff first began litigating this case in January 2011 and is now approaching the four year mark, without having had any decisions yet on the merits of Plaintiff's claim.  Shortly after the first opportunity to litigate an aspect of the substance of Plaintiff's claims, Defendants are now seeking to avoid an adjudication on the merits through their stay, though the court in *Latif* has expressed a contrary sense of urgency: "[T]he time has come to resolve the claims of each Plaintiff…as soon as practicable."  Latif v. Holder, Case No. 3:10-cv-0750, Doc. 152, 2 (D. Or.). There is no basis for Defendants to delay the adjudication of Plaintiff's claims as the government advances the litigation of other plaintiffs with similar—but not identical—claims.

They have avoided an adjudication in 2014 through abusively invoking the states secrets privilege, not as a tool to exclude particular pieces of evidence, but as a means of insulating its actions entirely from the judicial scrutiny brought on by this lawsuit.  This Court rejected Defendants' efforts, but this litigation has been dealing with Defendants' assertion for six months now.

This Court's January 22, 2014 order, in rejecting Defendants' argument that Mohamed should be required to exhaust DHS TRIP, relied in part upon "Mohamed's interest in a prompt adjudication of his claims, first filed more than two years ago, and the lack of any time requirement for the government to complete the DHS TRIP process, coupled with the defendant's inability to provide the Court any actual estimate of how long that process would take." Mem. Op. 24.  That interest in a prompt adjudication is even more pronounced now, almost a year later.

And while Defendants provide a few dates to suggest that there is a certainty to the period of stay that they are requesting, this impression is misleading.  If Defendants make procedural revisions in January 2015, it will almost certainly be the case that the procedures will be opaque and require an additional round of discovery.  Much has been learned about the No Fly List through

years of government hearings and reports. Subsequent to Defendants' process revisions, because publicly available information about these revisions will not yet exist, Plaintiff will need information about these procedures directly from Defendants themselves. As this Court knows, Defendants have been less than forthcoming and expedient in discovery.

## ARGUMENT

There are three reasons why this Court should proceed with the briefing schedule as is. First, the procedural due process infirmities that this Court has previously identified are not things Defendants are even considering altering. Second, the delay that Defendants are proposing is not simply two months, but will likely amount to the better part of 2015. And finally, this Court will have to, at some point, determine the process that is due to Plaintiff and the current record allows this Court to do that now.

**I. Defendants have not provided any indication that their revised DHS TRIP process will address this Court's procedural due process concerns.**

The decision in *Latif* does not direct Defendants to revise DHS TRIP in a manner that addresses the constitutional infirmities identified by this Court's Memorandum Opinion. *Latif* directs Defendants to fashion a process that provides two things: (1) "notice regarding their status on the No-Fly List and the reasons for placement" and (2) the opportunity to "submit evidence relevant to the reasons for" their placement that must be "considered at both the administrative and judicial stages of review." *Latif,* Doc. 136 at 61. These are issues that this Court has identified as well, but there is no indication that Defendants are revising DHS TRIP in light of this Court's most basic procedural due process inquiry: "whether the No Fly List and the redress procedures provided through DHS TRIP constitute an appropriate means to prevent terrorism directed against air travel while protecting the liberty interests at stake." Mem. Op. at 30.

Among the procedural due process infirmities identified by this Court is the fact that "it does not appear that unlawful conduct, unlawful speech, or unlawful association" is required to be placed on the No Fly List. *Id.* This Court has also made clear that the appropriate process may ultimately be "pre-deprivation," a possibility not contemplated by the proceedings in *Latif.* And finally, this Court has emphasized that there is no indication that Defendant "could not accomplish their objectives using less restrictive means, such as enhanced screening." *Id.* at 31. Each of these identify deficiencies beyond those identified in the *Latif* litigation and thus there is no basis to conclude that Defendants are now doing anything to address them. Because of this, a stay cannot possibly resolve Plaintiff's claims.

## II. The delay that Defendants' proposed stay would cause is unknown but certainly in excess of the two and a half months Defendants suggest.

Second, the delay Defendants' stay would cause is not simply the few months they identify. Currently, the parties have the information they need to file cross motions for summary judgment on December 1, 2014. If this Court grants Defendants' stay, there will be a long and drawn out process to identify exactly what revisions Defendants' have made. Thus, the parties will not be in a position to file dispositive motions in January 2015. And given Defendants' approach to discovery in watchlisting litigation, it will take much of 2015—as it took much of 2014—to get back to a point where dispositive motions could be filed.

If this Court allows summary judgment briefing to proceed now, subsequent to this Court's summary judgment decision, Defendants can explain how their procedures satisfy the procedural due process requirements the Court identifies. Because Defendants possess all of the information about their own procedures, this sequence of events is the most expeditious path forward. Rather than have Plaintiff cast a wide net to discover information about Defendants' revisions that this

Court may or may not rely upon, Defendants can elect to divulge the information it believes explain how they satisfy this Court's procedural due process decision.

### III. The most efficient means to move this litigation forward is by adhering to the Court's briefing schedule.

While Defendants suggest that judicial economy and the parties' resources are best preserved through their proposed stay, this is not accurate. The current record allows this Court to determine the procedural due process protections that must be accorded to Plaintiff if Defendants seek to place him or any other US person not convicted of a crime on the No Fly List. Having this determination in hand would provide the parties a basis for assessing the redress process revisions that Defendants suggest they are now making and will complete in January 2015. Defendants' motion would have Plaintiff wait until Defendants make their process revisions, tolerate the delays that have been characteristic to all federal watchlist litigation, and engage in the protracted litigation that will likely be necessary to obtain basic information about what has actually changed. Alternatively, by adhering to the Court's current schedule, fforts to uncover the relevant aspects of Defendants new process will be focused by this Court's decision based on the current record, and it will be a much simpler matter to have Defendants themselves explain the extent to which their revisions comport with this Court's decision rather than have Plaintiff attempt through discovery to identify those revisions. In sum, rather than await the results of Defendants unarticulated promise to make redress process revisions, a decision on the record now gives Defendants and Plaintiff a clear idea of what this Court will require with respect to the procedural due process protections that must be accorded to Plaintiff. This is what serves judicial economy best and what can actually move this litigation forward presently.

## CONCLUSION

For the above reasons, Plaintiff requests that this Court deny Defendants' Motion to Stay. In the alternative, if this Court does grant the stay, Plaintiff requests that he be allowed to proceed with discovery and dispositive briefing with respect to his substantive due process claim, which does not regard any administrative process in any manner.

Respectfully submitted,

_/s/_____

Gadeir Abbas
The Law Office of
Gadeir Abbas
1155 F Street, NW,
Suite 1050
Washington DC 20004
Ph: (720) 251-0425
*Licensed in VA; not in DC —
practice limited to federal matters*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2014, I served the foregoing document to Defendants

via electronic mail:

_/s/_____

GADEIR ABBAS
The Law Office of
Gadeir Abbas
1155 F Street, NW,
Suite 1050
Washington DC 20004
Ph: (720) 251-0425
*Licensed in VA; not in DC –*
*practice limited to federal matters*